UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| EVERLAST ROOFING, INC. : <br>     Plaintiff, : <br> : <br> v. : <br> : <br> MATTHEW WILSON, PEAK QUALITY : <br> PRODUCTS LLC and HIXWOOD : <br> METAL LLC : <br>     Defendants. : <br> : | Misc. Case. No.: 24-mc-_____ <br><br><br> Underlying Action: <br><br> Case No. 1:23-cv-00828-KM <br><br> United States District Court for the <br> Middle District of Pennsylvania |

**PLAINTIFF EVERLAST ROOFING, INC.'S MOTION TO QUASH
NONPARTY SUBPOENA TO HURRICANE ENGINEERING & TESTING, INC.,
MOTION TO TRANSFER PURSUANT TO FED. R. CIV. P. 45(f), AND
MEMORANDUM OF LAW IN SUPPORT**

The Plaintiff, Everlast Roofing, Inc. ("Everlast" or "Plaintiff"), in the matter of *Everlast Roofing, Inc. v. Matthew Wilson, et al.*, No. 1:23-cv-828, which is pending in the United States District Court for the Middle District of Pennsylvania, respectfully moves pursuant to Fed. R. Civ. P. 45(d)(3) for an Order quashing the Subpoena to Produce Documents, Information, or Objects ("the Subpoena") that Defendant, Matthew Wilson ("Wilson"), served on Hurricane Engineering & Testing, Inc. ("Hurricane"), a nonparty to this action.

In addition, Everlast contemporaneously moves pursuant to Fed. R. Civ. P. 45(f) for an Order transferring this matter to the United States District Court for the Middle District of Pennsylvania, the issuing court of the Subpoena, because Hurricane consents to the transfer and there are "exceptional circumstances" that warrant such transfer.

**INTRODUCTION**

This matter relates to an action that is pending in the United States District Court for the Middle District of Pennsylvania, in which Everlast asserts claims against, *inter alia*, Wilson, a former employee, for breach of his restrictive covenants and misappropriation of trade secrets

1

under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C § 1836, *et seq.*, and the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 P.S. § 5301, *et seq.* Everlast also asserts other claims against other defendants. Recently, Wilson served Hurricane, a nonparty, with the Subpoena, which seeks certain documents and communications relating product testing that Everlast retained Hurricane to perform. *See* Notice of Subpoena to Hurricane (a true and correct copy of which is attached hereto as **Exhibit A**).

As described below, Everlast moves pursuant to Rule 45(d)(3) to quash the Subpoena. Everlast seeks relief in this Court because the Subpoena states that Hurricane is to produce responsive material to Wilson's attorneys at their offices in Miami, Florida. However, United States District Court for the Southern District of Florida need not even consider the merits of this matter. Everlast also contemporaneously moves pursuant to Rule 45(f) to transfer this motion to the issuing court, the United States District Court for the Middle District of Pennsylvania, because Hurricane consents to the transfer and there are "exceptional circumstances" that warrant such transfer. *See* Declaration of Syed Waqar Ali, Ph.D. (a true and correct copy of which is attached hereto as **Exhibit B**).

## RELEVANT FACTUAL HISTORY

**A.    Information About Everlast's Business.**

By way of background, Everlast is a company that markets high-quality metal roofing and siding products for residential, commercial, and industrial customers throughout the United States. Am. Compl. at ¶ 6 (a true and correct copy of which is attached hereto as **Exhibit C**). Because the market for metal roofing and siding products is remarkably competitive, Everlast's ability to identify and secure the business of customers critical to its business. For example, Everlast spends and has spent significant time, money, and effort to solicit customers and maintain ongoing

2

relationships with its customers. *Id.* at ¶ 32. Indeed, many of Everlast's customers are part of various Amish or Mennonite communities throughout the United States, which are generally small, close-knit communities whose members have unique cultural needs; and Everlast has been able to develop and grow its business through proverbial word-of-mouth introductions and referrals within these communities. *Id.* at ¶ 33. Further, Everlast has developed relationships with customers and potential customers through methods including, but not limited to, attending trade shows and industry specific functions throughout the United States. *Id.* at ¶ 34.

In order to service its existing customers and further develop its business, Everlast maintains confidential and proprietary information and trade secrets including, but not limited to, customer contact information (such as the names, addresses, and phone numbers of customer representatives and potential customer representatives), historical sales volumes, competitive pricing information, special discounting arrangements, profitability analyses for certain products, marketing plans, and business strategies (collectively, "Customer Information Trade Secrets). *Id.* at ¶ 35. Everlast acquired and distilled these Customer Information Trade Secrets over many years as a result of innumerable calls and meetings with customers and potential customers; and through strong relationships that were developed with such customers and potential customers to learn about their respective needs, preferences, and priorities. *Id.* at ¶ 36.

B.   **Background Regarding Ridge Vent Foam.**

As one component of its business, Everlast imports a unique ridge vent foam product from Changzhou Dengyue Sponge Co., Ltd. ("Changzhou"), a company in China. *Id.* at ¶ 21. In connection therewith, Everlast conducted extensive testing on both Changzhou's and Everlast's competitors' products to ensure that Changzhou's product meets or exceeds certain qualities of Everlast's competitors' products. *Id.* ¶¶ 23-24.

3

Among other things, this testing involved analysis of the various products' self-initiation temperatures, flammability, fire rating, heat resistance, surface burning characteristics, flame spread index, and smoke development, as well as amounts of certain chemicals and compounds, tensile strength under various conditions including UV exposure and extreme temperatures, density, dimensional tolerance ratio, thickness dimension tolerance, stretch length, tear strength, and other characteristics.  *Id.* at ¶¶ 23-24.

Everlast retained the Subpoena-recipient, Hurricane, to conduct this testing.[1]

C.    **Allegations Concerning Wilson and His Competition.**

On approximately February 23, 2016, Everlast hired Wilson to work as a Business Development Manager.  *Id.* at ¶ 43.  In that role, his job was to sell light gauge, commercial and architectural products, slit coils, flat sheets, and related products in Everlast's Roofing Division. *Id.* at ¶ 44.  He also solicited business for Everlast's Progressive Metals and Metals divisions.  *Id.* at ¶ 45.  At the time of his hiring, Everlast and Wilson executed a restrictive covenant agreement ("the RCA"), which, among other things, prohibits him from competing against Everlast during his employment and for two years after his separation.  *Id.* ¶¶ 49-51.  Everlast later terminated Wilson's employment on or about March 7, 2023.  *Id.* ¶ 56.

During and subsequent to his employment with Everlast, Wilson repeatedly violated his RCA.  For example, after Wilson's employment with Everlast ended, he began working as a sales representative for Defendant, Hixwood Metal LLC ("Hixwood").  *Id.* ¶ 57.  In this new role, he competes directly with Everlast by, *inter alia*, using Everlast's "Customer Information Trade Secrets" to benefit Hixwood.  *Id.* at ¶¶ 58, 60-61.

---

[1]    It is noted that Everlast also retained other entities to conduct product testing.  Wilson served those other entities with nearly identical subpoenas, which are or will be the subject of related motions in other courts.

**RELEVANT PROCEDURAL HISTORY**

On May 19, 2023, Everlast initiated this action by filing a Verified Complaint [E.C.F. Doc. 1] in the United States District Court for the Middle District of Pennsylvania against Wilson, Hixwood, and Defendant, Peak Quality Products, LLC ("Peak") – a company that Wilson had formed – alleging claims for: (1) breach of contract against Wilson (Count I); (2) misappropriation of trade secrets under DTSA and PUTSA against Wilson and Peak based on the theory that they misappropriated Everlast's trade secrets *relating its testing of ridge vent foam* (Counts II and III); (3) tortious interference with contract against Hixwood and Peak (Count IV); and (4) unfair competition against Hixwood and Peak (Count V). That same day, Everlast also filed a Motion for Preliminary Injunctive Relief [E.C.F. Doc. 5].

Over the next few months, the parties conducted expedited discovery on the issues raised in Everlast's preliminary injunction motion. Pursuant thereto, Everlast obtained information and documents showing that Wilson and Peak's conduct was even more brazen than what Everlast knew when it first filed the action. For example, text messages from Wilson before and after his termination discussed how he could bypass Everlast and sell ridge vent foam products directly to its customers; and copies of his call logs from his new employment demonstrated that he solicited and targeted some of Everlast's customers to do business with Hixwood.

Ultimately, all Defendants agreed to the entry of a Consent Order [E.C.F. Doc. 56] on September 19, 2023, which granted, in part, Everlast's request for injunctive relief and placed limitations on all Defendants during the pendency of this litigation.

Thereafter, on January 3, 2024, Everlast filed an Amended Complaint that, *inter alia*, expanded its claims for misappropriation of trade secrets in Counts II and III to include *a new theory that all Defendants misappropriated Everlast's Customer Information Trade Secrets*. To

distinguish these new trade secrets claims from the original claims, the Amended Complaint labeled the original trade secrets the "**Product Testing Trade Secrets**."

On January 24, 2024, all Defendants moved to dismiss the Amended Complaint. *See* Mot. of Dft. Hixwood to Dismiss Am. Compl. [E.C.F. Doc. 75]; Mot. of Dfts. Wilson and Peak to Dismiss Am. Compl. [E.C.F. Doc. 77].

Crucially, in its Briefs in opposition to the motions to dismiss, Everlast stated clearly that it was abandoning its claims for misappropriation of the Product Testing Trade Secrets: "Everlast will not oppose Defendants' motions [to dismiss] to the extent that they seek dismissal of the claims asserted under the DTSA and the PUTSA relating to 'Product Testing Trade Secrets'" (*i.e.*, the claims that Wilson and Peak misappropriated Everlast's trade secrets relating its testing of ridge vent foam. *See* Everlast's Br. in Opp. to Dft. Hixwood's Mot. to Dismiss Am. Compl. [E.C.F. Doc. 79], at p. 2 n. 2; Everlast's Br. in Opp. to Dfts. Wilson and Peak's Mot. to Dismiss Am. Compl. [E.C.F. Doc. 80], at p. 2 n. 2. The Court has not yet ruled on the motions to dismiss.

In the interim, on May 8, 2024, counsel for Wilson emailed to counsel for Everlast notice of his intent to serve the Subpoena on Hurricane. For one thing, the Subpoena asks for material relating to certain testing of ridge vent foam products that Everlast retained Hurricane to conduct:

> REQUEST NO. 1: All Documents concerning any testing that You performed, contemplated performing, offered to perform, and/or were solicited to perform on any Ridge Vent Foam and/or on any product or material incorporating Ridge Vent Foam …
>
> * * *
>
> REQUEST NO. 5: All Documents concerning the allegations in paragraphs 23 and 24 of the Complaint that "before marketing the ridge vent foam, Everlast obtained samples of its competitors' products and conducted testing to determine certain qualities" thereof and that "Everlast conducted similar testing of the Changzhou ridge vent foam[.]"
>
> REQUEST NO. 6: All Documents concerning the allegation in paragraph 26 of the Complaint that "Everlast spent much time and incurred substantial expense to …

safeguard from competitors" certain information relating to the testing of Ridge Vent Foam.

*See* Subpoena to Hurricane, Schedule A, Reqs. Nos. 1, 5-6, at pp. 8-10 (Exh. A). The Subpoena also seeks related communications between Everlast and Hurricane:

> REQUEST NO. 2:  All Documents concerning any RFP issued, provided, or otherwise communicated to You by and/or on behalf of [Everlast].
>
> REQUEST NO. 3:  All Communications between You and [Everlast] concerning Ridge Vent Foam and/or testing that You performed, contemplated performing, offered to perform, and/or were solicited to perform on any Ridge Vent Foam and/or on any product or material incorporating Ridge Vent Foam.
>
> REQUEST NO. 4:  All Communications between You and any entity or entities other than Plaintiff concerning Ridge Vent Foam and/or testing that You performed, contemplated performing, offered to perform, and/or were solicited to perform on any Ridge Vent Foam and/or on any product or material incorporating Ridge Vent Foam.
>
> \* \* \*
>
> REQUEST NO. 9:  All Communications concerning Matthew Wilson and/or Peak Quality Products LLC.

*See Id.*, Reqs. Nos. 2-4, and 9, at pp. 9-10. Furthermore, the Subpoena seeks documents from Hurricane concerning costs that Everlast incurred for the testing of ridge vent foam products, and any confidentiality agreements that Everlast entered into with Hurricane:

> REQUEST NO. 7:  All Documents concerning any payments made and/or owed to You by or on behalf of [Everlast] concerning the testing of Ridge Vent Foam.
>
> REQUEST NO. 8:  All Documents concerning any agreements and/or policies that require or purport to require You to protect the confidentiality of and/or otherwise limit the dissemination of any information shared between You and [Everlast].

*See Id.* Reqs. Nos. 7-8 at p. 10.

After Wilson refused Everlast's request to withdraw the subject Subpoena, Everlast filed a letter with the court on May 10, 2024, seeking relief [E.C.F. Doc. 87]. Thereafter, on May 20, 2024, counsel for Wilson and Peak filed a letter in opposition [E.C.F. Doc. 89]; and counsel for

Hixwood filed a letter supporting Wilson and Peak's letter [E.C.F. Doc. 90]. Pursuant thereto, the Hon. Karoline Mehalchick, the presiding judge, held a telephonic conference with all counsel on May 22, 2024, to discuss the matter. Subsequently, Judge Mehalchick issued an Order on May 28, 2024 [E.C.F. Doc. 95] requesting briefing.

While Everlast's motion to quash the Subpoenas pursuant to Fed. R. Civ. P. 45(d)(3) and/or Fed. R. Civ. P. 26(c)(1) is pending in the United States District Court for the Middle District of Pennsylvania, Everlast files this present motion essentially seeking the same relief in this Court, as a prophylactic matter, because the Subpoena directs Hurricane to produce responsive material to Wilson's attorneys at their offices in Miami, Florida. *See* Fed. R. Civ. P. 45(d)(3)(A)-(B) (providing that a motion to quash a subpoena is to be filed in "the court for the district where compliance is required.").

## ARGUMENT

**A.** **Motion to Transfer to the United States District Court for the Middle District of Pennsylvania Pursuant to Fed. R. Civ. P. 45(f).**

As an initial matter, while Rule 45(d)(3) requires litigants to seek quashal of an improper subpoena in "the court for the district where compliance is required," Rule 45(f) authorizes such courts to transfer a motion to quash to the issuing court "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). With regard to this provision, the Advisory Committee Notes explain:

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests

8

>of the nonparty served with the subpoena in obtaining local resolution of the motion. Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.

2013 Advisory Committee Notes to Rule 45(f).

Here, both grounds that authorize this Court to transfer this matter for disposition to the United States District Court for the Middle District of Pennsylvania, the court that issued the Subpoena, are present. Of critical importance, **Hurricane consents to the request**. *See* Declaration of Declaration of Syed Waqar Ali, Ph.D. (Exh. B). *See Broidy Cap. Mgmt., LLC v. Muzin*, No. 1:22-mc-20786, 2022 WL 3356588, at *2 (S.D. Fla. Aug. 15, 2022) ("**The Court agrees with [subpoena-recipient] that his consent alone is sufficient to warrant transfer under Rule 45(f). … There is no absence of consent from the nonparty in this case, so the Court need not evaluate whether transfer is additionally warranted due to exceptional circumstances**") (internal quotations and citation omitted).

In any event, there are many "exceptional circumstances" that merit a transfer under Rule 45(f). *First*, as "[t]he prime concern" as to any motion made pursuant to Rule 45(f) is "avoiding burdens on local nonparties subject to subpoenas," this issue is alleviated because, as stated, Hurricane has agreed to a transfer. *See* 2013 Advisory Committee Notes to Rule 45(f).

*Second*, a transfer would mitigate the risk of different courts issuing inconsistent orders in this action. *See Rose v. Cellular Touch Wireless, Inc.*, No. 0:23-mc-62400, 2024 WL 1586065, at *3 (S.D. Fla. Mar. 26, 2024) (granting motion to transfer, in part, because "it is evident that the same discovery issues have arisen in several districts and transfer of the proceedings will avoid inconsistent results."), *report and recommendation adopted*, 2024 WL 1579794 (S.D. Fla. Apr. 11, 2024); *Edwards v. Maxwell*, 0:16-mc-61262, 2016 WL 7413505, at *2 (S.D. Fla. Dec. 22, 2016) (granting motion to transfer to prevent risk of inconsistent rulings). As discussed, Everlast's

related motion is currently pending in the issuing court before Judge Mehalchick. In addition, Everlast has or will shortly file similar motions in the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the Western District of Pennsylvania to quash nearly identical subpoenas that were served on two other entities that Everlast previously retained to conduct ridge vent foam product testing. A transfer will reduce the possibility that different courts make contradictory rulings.

*Third*, a transfer is appropriate because this action is both procedurally and substantively complex. This case involves highly technical issues and claims, which are the subject of several pending motions (including motions to dismiss). *See Hoog v. PetroQuest, LLC*, 338 F.R.D. 515, 517-518 (S.D. Fla. 2021) (transferring matter pursuant to Rule 45(f), in part, due to complex case history). Transferring this matter to the issuing court will allow Judge Mehalchick, the presiding judge, to exercise full and comprehensive management of this complicated action.

Accordingly, this Court should expeditiously transfer this matter to the United States District Court for the Middle District of Pennsylvania for disposition pursuant to Rule 45(f).

**B.** **Motion to Quash Subpoena Pursuant to Rule 45(d)(3).**

On the merits, Wilson's Subpoena to Hurricane should be quashed because it seeks material that is not relevant or proportional to the parties' discovery needs in the action, the Subpoena's purpose is simply to harass Hurricane and Everlast, and the Subpoena improperly seeks documents that constitute protectable trade secrets.

**1.** **Everlast Has Standing to Seek Relief.**

Everlast first addresses standing. Rule 45 provides that a court, upon motion, must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Rule 45 also provides that a court may quash a

10

subpoena when compliance will result in "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

It has been recognized that "a party has standing to move to quash a subpoena directed at a non-party if the party alleges a 'personal right or privilege' with respect to the subpoenas." *Peninsula Petroleum, Ltd. v. CI Int'l Fuels, LLC*, No. 1:22-cv-20712, 2023 WL 8476409, at *2 (S.D. Fla. Sept. 12, 2023) (citing *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005)).

Among other things, a movant has a "personal right" as to the subject matter of a subpoena if it can show that the subpoena seeks the movant's trade secrets or confidential and/or proprietary information. *See* Fed. R. Civ. P. 45(d)(3)(B)(i) (providing that the court may quash a subpoena if compliance would require "disclosing a trade secret or other confidential research, development, or commercial information."); *Medi-Weightloss Franchising USA, LLC v. Medi- Weightloss Clinic of Boca Raton, LLC*, No. 8:11-cv-2437, 2012 WL 12904394, at *3 (M.D. Fla. May 10, 2012) ("A party has standing to object to a non-party subpoena duces tecum with respect to privilege, trade secrets, confidential research, commercial information, or similar grounds personal to a party."). *Accord*, *Serrala US Corp. v. Paschke*, No. 3:21-cv-907, 2022 WL 19333286, at *2 n.3 (N.D. Fla. Sept. 7, 2022).

As discussed, the Subpoena asks Hurricane to produce a wide array of documents pertaining to product testing that Everlast hired it to perform, *see* Reqs. Nos. 1, 5-6 (Exh. A); costs that Everlast incurred for such testing, *see* Req. No. 7; agreements that Everlast entered into with Hurricane to protect the confidentiality of the product testing, *see* Req. No. 8; and communications between Everlast and Hurricane, *see* Reqs. Nos. 2-4, 9.

Everlast clearly has standing here because it has a "personal interest" in the subject matter of the Subpoena. The requested documents seek Everlast's protectable trade secrets, or, at minimum, Everlast's confidential and proprietary information about ridge vent foam testing which Everlast has a strong interest in protecting from disclosure in this case – particularly in light of the fact that Everlast has agreed to abandon its claims for misappropriation of its Product Testing Trade Secrets.

### 2. The Subpoena Seeks Documents and Information That Are Not Relevant to the Underlying Action.

"[A] subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information." *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020); *Weems Indus., Inc. v. Teknor Apex Co.*, No. 1:22-cv-1399, 2022 WL 19332037, at *2 (N.D. Ga. May 16, 2022). Under the discovery relevancy standard: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …" Fed. R. Civ. P. 26(b)(1).

Here, the Subpoena is specifically targeted to seek documents concerning the ridge vent foam product testing that Hurricane performed for Everlast, and other related matters. While the items requested by the Subpoena would certainly be relevant if Everlast were still pursuing claims for misappropriation of its Product Testing Trade Secrets (because the Subpoena seeks material that goes to the heart of whether the Product Testing Trade Secrets are, indeed, protectable trade secrets under DTSA and/or PUTSA),[2] that is not the case anymore. As stated, Everlast has

---

[2] For example, DTSA and PUTSA each define a "trade secret" as information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use. *Etimine USA, Inc. v. Yazici*, No. 2:20-cv-713, 2021 WL 1131256, at *4 (W.D. Pa. Mar. 24, 2021) (citing 18 U.S.C. § 1839(3); 12 P.S. § 5302); *Teva Pharms. USA, Inc. v. Sandhu*, 291 F.Supp.3d 659, 675 (E.D. Pa. 2018) (same).

12

abandoned these claims. Consequently, the subjects of the Subpoena are completely irrelevant and not proportional to Wilson's present needs in this case. On these grounds alone, this Court should quash the Subpoena.

Moreover, courts within the Third Circuit, where this action is pending, generally do not allow the parties to pursue discovery respect to claims that are no longer asserted in an action. *See*, *e.g.*, *Jackson v. SCI Huntingdon Prison Offs.*, No. 3:18-cv-1290, 2022 WL 16836623, at *6 (M.D. Pa. Nov. 9, 2022) (denying motion to compel discovery as moot because court dismissed claim that was the subject of the discovery dispute); *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. 107, 119 (M.D. Pa. 2017) ("On the other hand, given that a declaratory coverage claim is the only remaining claim at issue, the following interrogatories are also irrelevant, overbroad, and need not be answered …").

Based on proceedings as to this particular matter that have occurred in the United States District Court for the Middle District of Pennsylvania, Wilson has strained to find some – any – reason to support his position that the Subpoenas seek information that is relevant to his defenses in this case. For example, in his letter to the Court dated May 20, 2024 [E.C.F. Doc. 20] (a true and correct copy of which is attached hereto as **Exhibit D**), he argues that the subjects sought by the Subpoena are somehow relevant because: (a) Everlast's Amended Complaint referenced the Product Testing Trade Secrets (despite the fact that, again, Everlast subsequently took action to abandon its misappropriation claims based on that theory), *see Id.* at p. 8; (b) Everlast seeks significant economic damages to make it whole for injuries resulting from Defendants' unlawful conduct, *see Id.* at p. 9; and (c) the Subpoena purportedly seeks documents that "bear on whether Plaintiff's marketing claims concerning its ridge vent foam are false" (despite, of course, the fact

13

that Everlast alleges Defendants are selling the exact same products to Everlast customers), *see Id.* at p. 9. Quite simply, each of Wilson's alleged justifications flunk the relevancy test.

        3.        **The Purpose of the Subpoena Is Only to Harass Hurricane and Everlast.**

Discovery may not be sought "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii). Because the information sought by the Subpoena is neither relevant nor proportional to the discovery needs of the parties in this action, it is evident that its purpose is to engage in an unnecessary fishing expedition so as to harass Hurricane, and by extension, Everlast. *See Stevenson v. Johnson Bros. Corp.*, No. 2:18-cv-1702, 2019 WL 1083781, at *4 (N.D. Ala. Mar. 7, 2019) ("Because Defendant is not entitled to engage in 'fishing-expedition' discovery to search for potential wrongdoing, Plaintiff's Motion to Quash is due to be granted."); *Tradebank Int'l Franchising Corp. v. Fla. Barter Exch., LLC*, No. 1:12-cv-2810, 2014 WL 12861198, at *7 (N.D. Ga. May 13, 2014) (granting motion to quash, in part, and ruling that defendants were not entitled "to fish" into irrelevant issues). This is second and independent reason why the Subpoena should be quashed.

        4.        **The Subpoena Seeks Matter That Constitutes Everlast's Protectable Trade Secrets.**

Rule 45 provides that a court "may on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). "As to the provision of Rule 45 permitting the quashing of a subpoena that seeks to disclose trade secrets and other confidential information – Rule 45(d)(3)(B)(i) – courts weight the claim to privacy against the need for disclosure." *Jordan*, 947 F.3d at 1335 (citations and quotations omitted).

14

Here, Everlast's extensive product testing and the results of that testing ensure that the ridge vent foam product it sells is superior to those marketed by its competitors. In light of the continuing harm that Everlast suffers as Defendants improperly compete against it, further disclosure of information relating to the Product Testing Trade Secrets will only impose more harm on Everlast. Additionally, as set forth above, there is no question that Wilson is unable to show that the information sought is relevant to this action, particularly because Everlast has abandoned its misappropriation claims relating to Product Testing Trade Secrets.

## CONCLUSION

For all the foregoing reasons, Everlast respectfully requests that the United States District Court for the Southern District of Florida transfer this matter to the United States District Court for the Middle District of Pennsylvania, the court where the underlying action is pending and where the subject Subpoena was issued. In any event, regardless of which court considers the merits of this matter, the Subpoena that Wilson served on Hurricane should be quashed under Rule 45(d)(3).

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1, and as described in detail above, counsel for Everlast has discussed the relief sought in this motion with counsel for Defendant Wilson. The parties were unable to reach agreement.

Respectfully submitted,

DATED: May 31, 2024         CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

/s/ *Angelique Lyons*
Angelique Lyons, Esquire
100 North Tampa St., Ste. 2650
Tampa, FL 33602
Phone: (772) 878-5767
Fax: (772) 905-2541
alyons@constangy.com
*Local Counsel for Plaintiff Everlast Roofing, Inc.*

15

STEVENS & LEE, P.C.

Brad M. Kushner, Esquire
620 Freedom Business Center
Suite 200
King of Prussia, PA 19406
Phone:  (215) 751-1949
Fax:  (610) 371-7906
brad.kushner@stevenslee.com

Wade D. Albert, Esquire
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102
Phone:  (215) 751-2873
Fax:  (610) 371-7937
wade.albert@stevenslee.com

*Counsel for Plaintiff Everlast Roofing, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

Brian A. Berkley, Esquire
Nathan Huddell, Esquire
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
*Counsel for Defendants Matthew Wilson and Peak Quality Products, LLC*
Served via email

Jason T. Clagg, Esquire
Barnes & Thornburg LLP
888 South Harrison Street, Suite 600
Fort Wayne, IN 46802
*Counsel for Defendant Hixwood Metal, LLC*
Served via email

Chanda Ann Miller, Esquire
Cathryn Ryan, Esquire
Barnes & Thornburg LLP
Three Logan Square
1717 Arch Street, Suite 4900
Philadelphia, PA 19103
*Counsel for Defendant Hixwood Metal, LLC*
Served via email

Syed Waqar Ali, Ph.D.
President
Hurricane Engineering & Testing, Inc.
6120 NW 97th Avenue
Doral, FL 33178
waqar@hurricanetesting.com
Served via email